## DRESSLER v. STATE OF INDIANA.

[No. 24,250. Filed December 18, 1923.]

1. INTOXICATING LIQUORS.—*Offenses.—Evidence to Convict.*—A verdict of guilty under a count charging transporting and possessing intoxicating liquor cannot be sustained where there is no evidence supporting the charge of transporting, and the mere possession of liquor is not an offense under the law of this state.   p. 10.

2. CRIMINAL LAW.—*Appeal.—Review.—Searching the Record to Affirm.*—The court on appeal may search the record to affirm the judgment of the court below and look only to the evidence tending to support the verdict.   p. 11.

3. HUSBAND AND WIFE.—*Responsibility of Wife for Tort.—Common Law.*—The common-law rule of unity of husband and wife, and that the wife is under the protection, influence, power and authority of the husband who is regarded as the head of the household, has not been abrogated by statute law, and therefore prevails in this state.   p. 13.

4. HUSBAND AND WIFE.—*Liability of Wife for Crime.—Presumption of Compulsion of Husband.*—If a wife assists her husband in manufacturing liquor with a still in the home where they both reside as husband and wife, she is excused from

punishment because the offense was committed in his presence, and the legal presumption obtains that she committed the act under his direction and compulsion.  p. 13.

5.  INTOXICATING LIQUOR.— *Manufacture.*— *Evidence.*—*Responsibility of Wife.*—Evidence that in a home occupied by defendant and her husband a still was found sitting on an oil stove, the fire out and the cord disconnected, but the mash was quite hot; that the husband had been gone from the house three-quarters of an hour; that the wife was also temporarily absent when the officers searched the premises, is not sufficient to rebut the presumption that the liquor, if manufactured by the wife was so done under the direction of the husband, notwithstanding her admission that "she had a still in operation at her home." p. 15.

From Pulaski Circuit Court; *William C. Pentecost,* Judge.

Laura Dressler (Mrs. August) was convicted of violating the prohibition law and she appeals.  *Reversed.*

*Burson & Burson,* for the appellant.

*U. S. Lesh,* Attorney-General, and *Dale F. Stansbury,* for the State.

MYERS, J.—Appellant, in the court below, by an amended affidavit in three counts, was charged jointly with her husband:  (1) with unlawfully transporting and possessing intoxicating liquor; (2) with having possession of intoxicating liquor with intent to sell, barter, exchange, give away, furnish and otherwise dispose of the same; and (3) with unlawfully having and possessing a certain still, device and property for the manufacture of intoxicating liquor intended for use in violation of the laws of this state.  §8356d Burns' Supp. 1921, §1, Acts 1921 p. 736, amending §4, Acts 1917 p. 15.

On September 4, prior to the trial of appellant September 20, 1922, her husband pleaded guilty to the charge of unlawfully having and possessing the same still for the possession of which appellant was also convicted.  The husband was sentenced and appellant

pleaded not guilty but was convicted of the charge presented by each the first and third counts of the affidavit, and fined $100 for each offense. Judgment was in accordance with the verdict.

Appellant relies solely upon the alleged error of the trial court in overruling her motion for a new trial, whereby she insists that the verdict of the jury was not sustained by sufficient evidence and that it was contrary to law.

The state insists that the verdict on the first count of the affidavit charging possession of intoxicating liquor is amply supported by the statement of a

1. witness that there was a drip from the coil of the still, and appellant's admission to the sheriff regarding her possession of the still. There is no pretense or claim of any evidence to support the charge of transporting intoxicating liquor, and as the mere possession of such liquor is not an offense in this jurisdiction (*Ward* v. *State* [1919], 188 Ind. 606; *Reed* v. *State* [1920], 189 Ind. 98; *Callender* v. *State* [1923], 193 Ind. 91, 138 N. E. 817; *Crabbs* v. *State* [1923], 193 Ind. 248, 139 N. E. 180; *Powell* v. *State* [1923], 193 Ind. 258, 139 N. E. 670; *Reinchild* v. *State* [1923], 193 Ind. 702, 139 N. E. 673; *Asher* v. *State* [1923], 193 Ind. 701, 139 N. E. 674), the verdict of conviction on the first count was without evidence to support it, and therefore contrary to law.

With reference to the third count, it will be observed that all of the evidence pertains to the still alone, and to no other device or property for the manufacture of liquor. Hence, the question of evidence to support this count narrows down to the language in the affidavit which follows the statute, as though it read—*It shall be unlawful for any person to have or possess any still for the manufacture of liquor intended for use in violation of the laws of the state.* Thus, in a few words, we

have the essential elements of the charge which must be proved to the satisfaction of the jury beyond a reasonable doubt. If there was any direct evidence, or evidence from which inferences might reasonably be drawn, supportive of each of these elements, then we would not be authorized to disturb the judgment. However, if there was such evidence, we should be

2. able to point to it. We may search the record to affirm, and look only to the evidence tending to support the verdict. We start with the assumption that there was evidence before the jury justifying its conclusion.

The evidence was substantially as follows: On behalf of the state, the record discloses the testimony of one witness, and as exhibits, a small still and a small quantity of home-made whisky obtained by the sheriff at the residence of August Dressler. The sheriff testified that, on May 10, 1922, after he had obtained warrants authorizing him to search several homes in the town of Ripley, Pulaski county, Indiana, with three other men drove to that town and into the alley between the homes of August Dressler and John Thrapp. The witness, as he drove into the alley, saw Mrs. Dressler crossing the street and we "got up with her about the time she went in the home," which they searched. The witness then told Mrs. Dressler that he had a search warrant for her home also, and he says her reply was, "Well, my God, I don't know what to do. I have a still over there in operation now." We then went over to her home and she showed us the still, coil and liquor. "They were sitting on an oil stove and the mash in the still was still warm. We took a sample of it, and that is the liquor we got." The still was hot, "couldn't take hold of it," and we used rags to carry it outside. The still was setting on an oil stove, but the fire had been turned out and the coil was disconnected. Two pint

bottles of liquor and a small quantity in a can were found. The three persons mentioned were the only ones present. This was about nine o'clock in the forenoon. Mr. Dressler, the husband of appellant, and whose home the witness had a warrant to search, was at the time at work in a neighbor's field and had left his home about three-quarters of an hour before. Moreover, it was unquestionably shown by the state that August Dressler and this appellant were at the time husband and wife and were living together as such in the home of August Dressler at the time of the raid, and in the house where the still in question was found. Mrs. Dressler denied making the statement attributed to her at the Rader home. But the uncontradicted evidence on behalf of appellant, as well as the circumstances and incidents connected with the raid, if believed, would conclusively establish the additional facts that August Dressler was the sole owner and individually operated the still in a small way in the manufacture of whisky for his own use, over the objections of his wife. That food in a vessel cooked upon this stove would remain warm and show some steam for an hour or more after the fire was turned out, and that one could readily handle the mash in the boiler with bare hands at the time it was removed without any annoying effect on account of the heat. Furthermore, the only connection between appellant and the still was that she resided with her husband in the home where the still was kept.

The physical facts speak for themselves. We take them as detailed by the state, that is to say, a still containing mash which produced whisky was found by the sheriff in the home of August Dressler. The coil was detached. The still was not in operation. It was sitting upon an unlighted oil stove. The mash was warm, and the still, in the opinion of the sheriff, was too hot

for him to handle without rags. No mash other than that in the still, or other than two pints and a small quantity in a can of intoxicating liquor was found. No claim that the house where the still and liquor were found was used for any purpose other than by August Dressler and his wife as a dwelling. It is not asserted by any one that appellant endeavored to deceive the sheriff, or in any manner attempted to dispose of or secrete the still or liquor, or that she made any denial of the true situation.

The effect, and only possible effect of the evidence was to prove the fact that August Dressler had in his home a still and mash sufficient to produce a little over two pints of whisky, but we look in vain for any circumstance or even a human suggestion that the liquor thus made was "intended for use in violation of the laws of the state," other than the inference from the quantity. Furthermore, appellant was the wife of August Dressler. He paid the penalty for the same offense of which his wife was convicted. By law, his domicile is her domicile, and if the offense here charged was committed by appellant, the physical facts conclusively show that it was done in his presence. There is no pretext for saying that the liquor found was produced by appellant after her husband had left his home. The intervening time between his leaving and the finding of the still and liquor was, in a measure, accounted for by her presence in the home of a neighbor.

The common law pertaining to the duties and responsibilities of husband and wife prevails in this state, except as modified and changed by statute. We 3, 4. have no statute abrogating the common-law rule of unity of husband and wife, and hence the wife, according to this rule, is under the protection, influence, power and authority of the husband who is regarded the head of the household and in control of

its affairs. So that if appellant did in any manner assist her husband in offending the law as charged, she is excused from punishment because the offense, if any, was committed in the presence of her husband, and therefore the legal presumption obtains that she acted under his direction and compulsion. *Caldwell* v. *State* (1923), 193 Ind. 237, 137 N. E. 179, and cases there cited. . See, also, *Braxton* v. *State* (1919), 17 Ala. App. 167; *People* v. *Paule* (1921), 223 Ill. App. 613; *People* v. *Liebiotka* (1921), 216 Mich. 316; *State* v. *Martini* (1910), 80 N. J. Law 685. While this presumption may be rebutted, there was no thought of an attempt to do so in this case.

. While, as noticed in the Caldwell case, the legislature, by enabling acts, has removed many disabilities of married women known to the common law, yet the law in this jurisdiction still recognizes the unity of husband and wife for some purposes, which is in keeping with the spirit of our institutions that the unity of the family relations be not disturbed and its concord marred by compelling the wife to assert a right of control over the personal and individual acts of the husband in his own home, or abandon it. So long as this rule stands, questions of the character now under consideration must be treated as not being within the general rules applicable to persons who are in law and in fact distinct and separate individuals.

In *State* v. *Martini, supra,* the wife of a husband engaged in conducting a picture postal card establishment was indicted for selling an obscene or indecent picture, contrary to a certain section of the Crimes Act of the State of New Jersey. A customer entered the store and the husband directed his wife to wait upon him, which she did by selling him admittedly obscene and indecent cards, which were produced upon the trial. When the witness for the state entered the store the

husband was sitting in the rear thereof, but immediately retired into a back room which was separated from the store only by curtain hangings. At the close of the evidence the defendant moved that the court direct a verdict in her favor, which was denied. On appeal, the court said: "The motion was predicated upon the proved and apparently undisputed fact that the husband, being upon the premises and in a position where his presence could influence the conduct of the defendant, the law absolved her from guilt, in the absence of any testimony from which it might be claimed that the presumption of law of the existence of coercion on the husband's part was legally rebutted. We think, under these facts and circumstances, the defendant was entitled to a direction of acquittal."

In 21 Cyc 1147, it is said: "The husband is the head of the family, and as such has the general right at common law to regulate the household, its expenses, and its visitors, and to exercise the general control of the family management."

In view of the law as it is conceded to be in this jurisdiction as well as in all other jurisdictions where the common law prevails, it would require a 5. stretch of imagination and a supersensitive mind on drawing inferences by either a court or jury, to say that the wife, after her husband left home and within three-quarters to an hour, and a portion of that time away from the scene of the alleged offense, could have produced the results that the state claims and the physical facts show existed. Stress the admission said to have been made to the sheriff for all it is worth, it cannot be claimed that the still was in operation at the time the admission was made. Then, from any reasonable view-point of this evidence, an affirmance of this judgment must be upon the theory that after August Dressler left his home this appellant, his wife,

turned out the burning wick of the oil stove and disconnected the coil from the still, and because of these inferences alone, she should pay the penalty of the law the same as her husband. In our opinion no such result should follow.

A careful consideration of the entire record in this case will compel the conclusion that the jury was misled and misunderstood the issues for trial, and that there was no evidence to rebut the legal presumption existing in appellant's favor, nor that she had manufactured liquor intended for use in violation of the laws of this state.

Judgment reversed, with instructions to sustain appellant's motion for a new trial, and for further proceedings not inconsistent with· this opinion.

### DISSENTING OPINION.

EWBANK, C. J.—For reasons which have been stated in a dissenting opinion in *Powell* v. *State* (1923), 193 Ind. 258, 139 N. E. 670, on page 672, I dissent from so much of the principal opinion as holds that mere possession of intoxicating liquor has not been made a public offense in Indiana, under §1, ch. 250, Acts 1921 p. 736, §8356d Burns' Supp. 1921. And because it is the exclusive province of the jury to determine which of two or more inferences that might reasonably be drawn from the facts proved shall be drawn therefrom, and from the presence of a hot still sitting on the stove in appellant's home when her husband was away, and the other facts in evidence, the jury that tried this case drew an inference that appellant had possession of the still for the alleged purpose, this court cannot properly reverse the judgment on the weight of conflicting evidence, such as the statements and testimony of appellant and her husband as to how long it had been since the husband left the house, that it was he and not she

who possessed and operated the still, that he did it over her objections, and that the whisky was made only for his own use. Such statements and testimony were items of evidence in favor of the defendant, to be (as we must presume they were) considered by the jury in finding its verdict.

### CONCURRING IN DISSENTING OPINION IN PART.

GAUSE, J.—I concur in the dissenting opinion, so far as it would hold that there was evidence from which the jury might reasonably have drawn an inference of guilt. Not having participated in the decision of *Powell* v. *State, supra,* and *Crabbs* v. *State, supra,* I express no opinion as to the question therein decided.